UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JAMES PYUNG LEE and HEE SOOK NAM,<br><br>  Plaintiffs,<br><br>v.<br><br>VERIMATRIX, INC., ROBIN "ROSS" COOPER, and INSIDE SECURE,<br><br>  Defendants. | Case No.:  19-cv-2054-W (BLM)<br><br>**ORDER:**<br><br>**(1) DENYING VERIMATRIX, INC.'S MOTION TO DISMISS [DOC. 59] AND**<br><br>**(2) DENYING ROBIN "ROSS" COOPER'S MOTION TO DISMISS [DOC. 63]** |
|---|---|

Pending before the Court are Defendant Verimatrix, Inc.'s ("Verimatrix") and Robin "Ross" Cooper's ("Cooper") motions to dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and lack of subject-matter jurisdiction under 12(b)(1). (*Verimatrix MTD* [Doc. 59]; *Cooper MTD* [Doc. 63].) The Court decides the matters on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** Verimatrix's motion [Doc. 59], and **DENIES** Cooper's motion [Doc. 63].

## I.  BACKGROUND

This case stems from the sale of 440,000 shares of Verimatrix by Cooper to Plaintiffs and the subsequent sale of Verimatrix to Defendant Inside Secure without compensating Plaintiffs.

The story begins in 2002, when Cooper was the CEO and president of Verimatrix. (*FAC* ¶¶ 8, 10.) Seeking to raise money, Cooper asked the director of Verimatrix, Dr. Dae Surh, to locate investors.[1] (*FAC* ¶ 10.) Dr. Surh arranged a meeting between Plaintiff Lee and Cooper while the two were in South Korea. (*FAC* ¶ 12.) The meeting culminated in Lee giving Cooper a brown bag containing the equivalent of $20,000 in South Korean currency in exchange for Cooper's promise to execute and deliver a physical capital stock certificate to Lee in Dallas County, Texas, where Lee lived. (*FAC* ¶ 15.)

Cooper made the same agreement with Plaintiff Nam, who delivered $20,000 cash to Dr. Surh in Dallas, Texas, and who then delivered the cash to Cooper. (*FAC* ¶ 18.)

On March 12, 2003, Cooper issued himself 440,000 shares of capital stock and transferred 220,000 to each Plaintiff respectively. (*FAC* ¶¶ 19, 20.) Both transfers included witnesses and were delivered to Plaintiffs in Dallas County by Dr. Surh. (*Id.*) That same day, Cooper also issued and transferred an additional 100,000 shares of capital stock to Plaintiff Nam. (*FAC* ¶ 32.)

From 2005 to 2008, a company in which Plaintiffs had ownsership interest, Texas Tech Investment Inc., also acquired Verimatrix shares of common stock, series AA preferred stock, and series C preferred stock. (*FAC* ¶ 24.)

In early 2019, Plaintiffs learned that Inside Secure was purchasing Verimatrix when Texas Tech Investment Inc. received an email from Verimatrix. (*FAC* ¶ 26, 27.) Although Defendants acknowledged the validity of Nam's 100,000 shares of capital stock, they have denied the validity of the 440,000 shares allegedly transferred that same

---

[1] Dr. Surh is now deceased. (*FAC* ¶ 11.)

day.  (*FAC* ¶ 32.)

On January 9, 2019, Plaintiffs filed this action in the 134th Judicial District, Dallas County, Texas, asking for declaratory judgment and alleging claims of fraud in the offer of securities and fraudulent representation.  [Doc. 1-3.]  On April 12, 2019, Cooper removed the case to the Northern District of Texas based on diversity jurisdiction.  (*Not. of Removal* [Doc. 1].)

On May 7, 2019, Plaintiffs filed their First Amended Complaint.  (*"FAC"* [Doc. 9].)  On May 21, 2019, Verimatrix filed its Motion to Dismiss.  [Doc. 18.]  Cooper also filed a Motion to Dismiss that same day and requested transfer to this District in the alternative.  [Doc. 15.]

On October 25, 2019, the case was transferred to this District.  [Doc. 32.]  Cooper renewed his Motion to Dismiss the FAC, to which Verimatrix joined.  [Docs. 41-42.]  Plaintiffs failed to oppose and this Court granted Cooper's Motion with leave to amend.

On March 30, 2020, Plaintiffs filed the SAC.  Now before the Court are Defendant Verimatrix and Cooper's Motions to Dismiss Plaintiffs' SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject-matter jurisdiction under 12(b)(1).  (*Verimatrix MTD* [Doc. 59]; *Cooper MTD* [Doc. 63].)  Plaintiffs oppose.

II.  **LEGAL STANDARD**

A.  **Motion to Dismiss for Lack of Standing**

The Court must dismiss a cause of action for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  "The party asserting federal subject matter jurisdiction bears the burden of proving its existence."  Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)).  Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992).  This limitation forms "the core component of standing[,]" a doctrine that ensures federal courts decide only those cases "that are of the

justiciable sort referred to in Article III[,]" those that are "'appropriately resolved through the judicial process[.]'"  Id. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

Upon a 12(b)(1) motion facially attacking subject matter jurisdiction, the Court assumes true all allegations of fact in the Complaint and draws all reasonable inferences in the plaintiff's favor.  See Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)); see also City of Los Angeles v. Wells Fargo & Co., 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Meyer, 373 F.3d at 1039.  "If the moving party converts 'the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'"  Wolfe, 392 F.3d at 362 (quoting Meyer, 373 F.3d at 1039).

### B. Motion to Dismiss for Failure to State a Claim

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty.,

487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

Well-pleaded allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Leave to amend should be freely granted when justice so requires.  See Fed. R. Civ. P. 15(a).  However, denial of leave to amend is appropriate when such leave would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996); Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997).

### III. DISCUSSION

Plaintiffs seek declaratory judgment as to ownership of the 440,000 shares of Verimatrix stock and, in the alternative, allege claims of fraudulent representation and fraud in the sale of securities.  Defendants argue Plaintiffs' claims are time-barred, inadequately plead, and that their claim for declaratory relief is not justiciable.  The Court addresses each argument in turn.

#### A. Statute of Limitations

Defendants argue that Plaintiffs' fraud claims are time-barred because the underlying acts occurred in 2002 and 2003, when Cooper allegedly transferred the stocks to each of the Plaintiffs in exchange for $20,000.  However, Plaintiffs allege they only

discovered the fraud in 2019, when Inside Secure purchased Verimatrix without purchasing Plaintiffs' 440,000 shares.  See Gabelli v. S.E.C., 568 U.S. 442, 449 (2013) (quoting Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)) ("[W]here a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered.'")  By filing their claims within a year of discovering the alleged fraud, it is not apparent on the face of the SAC that Plaintiffs ran afoul of any applicable statute of limitations.  See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 10 992, 997 (9th Cir. 2006)) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'")

Defendants nevertheless argue the claims should be dismissed because the exercise of reasonable diligence should have put Plaintiffs on notice years before 2019.  Specifically, Defendants claim that as shareholders Plaintiffs should have expected "yearly reports, additional documents verifying their ownership, first offers for new opportunities to invest, and other correspondence." (*Cooper MTD* 8:19–21.)  Such claims are speculative, however, and nothing in the SAC indicates that Plaintiffs received any notification of the alleged wrongdoing prior to 2019.  It could, for example, likewise be speculated that because Plaintiffs had possession of the stock certificates issued by Cooper they had no reason to doubt their ownership.  The Court cannot dismiss the SAC based on such speculation.[2]

Defendants point out that the fraud claims are argued in the alternative, so it is unclear if the declaratory judgment claim should be aligned with a fraud statute of

---

[2] The parties dispute whether California or Texas law applies with regard to the fraud claims.  Given that all potentially applicable statute of limitations provide for at least a year to file a claim and given the insufficient briefing by the parties on the appropriate choice of law in this case, the Court declines to address the issue at this stage.

6

limitations. Regardless of which statute of limitation applies, however, the above analysis results in its satisfaction.

### B.     Fraud Allegations

Defendants argue the SAC pleads the allegations of fraudulent conduct with insufficient particularity. Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under our case law, "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotations and citations omitted). This standard "does not require absolute particularity or a recital of the evidence." Id. (internal quotations and citations omitted). Therefore, a complaint need not allege "a precise time frame," "describe in detail a single specific transaction," or indicate the "precise method" used to carry out the fraud. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

Here, the allegations of fraud are specific enough for Defendants to formulate an effective response. The SAC states:

> the material misrepresentations included Defendant Cooper's representation to each Plaintiff that (1) Cooper owned 220,000 shares of capital stock of Verimatrix; (2) Cooper had the authority, as president and CEO of Verimatrix, to transfer his 220,000 shares of capital stock of Verimatrix to each Plaintiff; (3) Cooper would execute the transfer of 220,000 shares of capital stock of Verimatrix to each Plaintiff; (4) Cooper would deliver valid certificates of said stock to Plaintiffs; and (5) Plaintiffs would become shareholders of Verimatrix after Cooper receives $20,000 from each Plaintiff and upon execution of the transfer and delivery of the stock certificates.

(*SAC* ¶ 50.) Additionally, the SAC states when and where these material misrepresentations took place. The SAC alleges Cooper executed the stock certificates he misrepresented the validity of on March 12, 2003. (*FAC* ¶¶ 19, 20.) The SAC further

alleges Dr. Surh delivered the executed shares to Plaintiffs in Dallas County, Texas. In regards to Plaintiff Lee, the SAC alleges the statements were made at the Rivera Hotel in Seoul, South Korea in 2002. Although the SAC could provide a more specific "when" than 2002, the year in conjunction with the country and hotel the meeting took place should be sufficient information to craft an answer. In regards to Plaintiff Nam, the SAC alleges that Cooper made the same agreement with Nam that same year in Texas and Nam delivered the $20,000 in Dallas, Texas. When read with the rest of the Complaint, these allegations are sufficient to give Defendants notice of the alleged fraud to defend against it.

### C. Declaratory Judgment

As explained above, Plaintiffs originally filed suit in Texas state court seeking a declaration that they own the 440,000 shares in Verimatrix at issue. However, while the action was pending, Inside Secure purportedly completed the acquisition of Verimatrix. Now, Defendants reiterate their statute of limitations argument that any wrongful acts took place 17 years ago and claim there is no present controversy because the sale of Verimatrix to Inside Secure is already complete.

A claim for declaratory relief requires a plaintiff to allege facts showing the existence of an "actual controversy." 28 USC § 2201. "The requisite personal interest establishing a case or controversy for the courts to adjudicate must exist at the commencement of the litigation, under the doctrine of standing, and must continue throughout its existence, under the doctrine of mootness." Smith v. Univ. of Washington, Law Sch., 233 F.3d 1188, 1193 (9th Cir. 2000). An actual controversy becomes moot when there is a material change in circumstances that terminates the controversy between the parties entirely. See Cardinal Chemical Co. v. Morton Int'l, Inc., 508 U.S. 83, 98 (1993). "The burden of demonstrating mootness is a heavy one." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal quotations and citations omitted).

An actual controversy remains in this case despite the sale of Verimatrix to Inside

Secure.  Contrary to Defendants' argument, issuing a declaratory judgment here would not be a mere declaration of past liability, but rather a declaration affecting future rights with respect to the shares—i.e., whether Plaintiffs own the 440,000 shares and whether those shares have been sold to Inside Secure or were converted by Defendants remains a controversy.  In other words, either Cooper was compensated for the shares of capital stock upon Inside Secure's purchase of Verimatrix, or the shares never existed or were never transferred and Defendants have improperly benefitted from Plaintiffs' investment.  In either scenario, future dealings between the parties are affected.

Cooper argues the only remaining controversy is between Plaintiffs and Verimatrix or Inside Secure and that he need not be included.  He contends the only declaration sought concerning him—whether he had the authority to ratify and transfer the stock certificates in 2003—is a question of historic fact with no likelihood of recurring and therefore not suitable for declaratory relief.  However, as explained above, Plaintiffs are not seeking a declaration of Cooper's past liability, rather they are seeking a clarification as to whether they own the stocks now.  Cooper's authority to transfer those shares remains relevant to that controversy.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Verimatrix's Motion to Dismiss [Doc. 59], and **DENIES** Cooper's Motion to Dismiss [Doc. 63].

**IT IS SO ORDERED.**

Dated:  August 17, 2020

Hon. Thomas J. Whelan
United States District Judge